# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| VALEO NORTH AMERICA, INC., | |
| Plaintiff, | Court No. 21-00426 |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## PLAINTIFF'S MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT OR CONSOLIDATE CASES AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Valeo North America, Inc. ("Valeo"), opposes Defendant's Rule 12(b)(1) motion to dismiss and moves to amend the Summons and Complaint pursuant to Rules 3(e) and 15(a) of the Rules of United States Court of International Trade, respectively, to amend the jurisdictional basis for the claims present in Valeo's complaint and to present claims not currently included in Plaintiff's complaint challenging the U.S. Department of Commerce's ("Commerce") failure to issue a lawful scope ruling or initiate a formal scope ruling within regulatory deadlines. Alternatively, Plaintiff moves to consolidate this matter with Court No. 21-00581. The reasons for this opposition and motion to amend or consolidate are detailed below. Valeo's proposed Amended Summons and Amended Complaint are provided with this motion.

### A. Commerce Continues to Refuse to Issue a Lawful Scope Determination

Commerce has still not issued a lawful scope determination. The memorandum issued by Commerce on October 15, 2021 is not a lawful scope determination and Commerce continues to be in violation of its regulatory obligation to either (1) issue a lawful scope determination; or (2) formally initiate a scope proceeding.

Commerce has forty-five days to either (1) issue a scope ruling based solely upon the scope ruling application and the descriptions of the merchandise utilizing "(k)(1)" sources in the applicable regulation, or (2) initiate a formal scope inquiry to consider certain "(k)(2)" regulatory factors.  *See* 19 C.F.R. 351.225(c)(2) (April 1, 2021); *see also* 19 C.F.R. 351.225(d) and (e).  Commerce has done neither, choosing instead to issue a memorandum finding that Valoe's T-series aluminum is subject to the scope of the AD-CVD orders.  This determination was reached without consideration of the regulatory framework required in a scope analysis.  Failure to follow the regulatory framework for issuing a scope determination renders Commerce's memorandum an unlawful determination that must be set aside.

Commerce's regulations outline the necessary steps for assessing whether a product is included within the scope of an order.  *See* 19 C.F.R. § 351.225 (2015).  Commerce will consider "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1).  Should these "(k)(1) factors" not be dispositive, Commerce then turns to subsection (k)(2), which lists the following "(k)(2) factors" to consider: "(i) {t}he physical characteristics of the product; (ii) {t}he expectations of the ultimate purchasers; (iii) {t}he ultimate use of the product; (iv) {t}he channels of trade in which the product is sold; and (v) {t}he manner in which the product is advertised and displayed."  19 C.F.R. § 351.225(k)(2).  Commerce may not interpret an order "so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms."  *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001) (citing *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed. Cir. 1998)).

In its original scope ruling, Valeo provided a detailed description of the product,

including its technical characteristics and uses, and its current U.S. Tariff Classification number. At no point has Commerce disputed this point. Moreover, "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission" were also provided.  When it "rejected" Valeo's filing on July 2020, Commerce acknowledges that it did so "because it did not contain all the information necessary to made a scope ruling, and { } issued an accompanying supplemental questionnaire."  *See* Memorandum, from Frank Schmitt, Case Analyst, Office VI, AD/CVD Operations, to Scot Fullerton, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Antidumping and Countervailing Duty Orders on Aluminum Sheet from the People's Republic of China; Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) (ACCESS Barcode: 4172205-01) ("Decision Memorandum") at 2.  In other words, Commerce concluded that the k(1) factors ("{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission)" were not dispositive.   Despite the recognized ambiguities, Commerce failed to initiate a scope ruling as required by the regulations.

To resolve these ambiguities, on July 20, 2020 Commerce requested information related to physical characteristics and end-use, both (k)(2) factors:

- Fully describe the heat treatment and/or annealing process which the heat-treated T-series aluminum sheet undergoes.

- Explain the distinction between "heat treatment" and "annealing" for Valeo's T-series aluminum sheet

- Using your definition in response to the above question, would the heat-treated T-series aluminum sheet be considered heat treated, annealed, or both?

- At what point in the production process does the heat-treatment or annealing occur? Who performs it?

- At any time in the production of heat-treated T-series aluminum sheet is the temperature of the aluminum sheet increased to temperatures at or above 850° Fahrenheit?

*See* Letter from Commerce to Crowell & Moring LLP, *Common Alloy Aluminum Sheet from the People's Republic of China: Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (July 20, 2020) (ACCESS Barcode: 4003318-01). These questions clearly relate to (k)(2) factors.

Finding that the scope was still ambiguous, despite receiving complete answers to Commerce, July 20, 2020 questionnaire, on February 3, 2021, Commerce again "rejected" Valeo's scope ruling request "because it did not contain all the information necessary to make a scope ruling, and we issued an accompanying supplemental questionnaire." After conceding for a second time that the (k)(1) factors were not dispositive, Commerce again sought information related to (k)(2) elements:

- How is the "diffusion and integration of particles between original boundaries," resulting in "no discrete boundary between the source alloys," but with "discernable phases of diffused alloys," that occurs with Valeo's heat-treated T-series sheet different from the "diffusion between the core and cladding" that the Aluminum Association states may alter the composition of the cladding due to thermal treatment?

- Does the proprietary core of Valeo's t-series aluminum sheet have a higher melting point than the 4045-aluminum alloy outer layers?

- Please resubmit the mechanical properties exhibit to show the mechanical properties for both heat-treated T-series aluminum sheet and pre-heat-treated center/inner layer of T-series aluminum.

- Other than the addition of flux coating, are there any steps taken to change the imported heat-treated T-series sheet from an intermediate product to a finished brazing sheet? If so, what are the additional steps taken to change the imported heat-treated T-series sheet from an intermediate product to a finished brazing sheet?

These are only exemplary of the additional information requested by Commerce that clearly go to "{t}he physical characteristics of the product; (ii) {t}he expectations of the ultimate purchasers; and (iii) {t}he ultimate use of the product, *i.e.*, k(2) factors.  In its determination memorandum, Commerce concedes that information related to these (k)(2) factors were necessary for its determination, but refuses to acknowledge that is was undertaking a (k)(2) analysis.

Commerce also went beyond the k(1) factors in off-the-record meetings with counsel for DIP.  On June 12, 2020, and April 19, 2021, Commerce held ex parte meeting with counsel for the DIP.  Valeo requested, but was denied, information on the factual information discussed at these meeting and considered by Commerce.  The only information available to Valeo is that the relationship between an administrative review and Valeo's scope ruling was discussed, which is, again, information beyond the (k)(1) parameters. Valeo reiterates to the Court the same concern expressed to Commerce regarding these meetings.  If factual information was discussed and presented, such information must be made part of the administrative record. To date, Commerce has rejected Valeo's request to provide such information.

In its memorandum, Commerce concedes that it relied on information outside the (k)(1) and solicited in the questionnaires discussed above. Commerce can cannot claim that it was merely soliciting superfluous information as such information was central to its determination. Setting aside the lack of substantial evidence supporting Commerce's conclusion that Valeo did not demonstrate that its T-series aluminum was heat-treated, the extensive discussion of heat treatment in the decision memorandum demonstrates that the physical characteristics of the product (a (k)(2) factor) was central to Commerce's analysis.  Commerce's memorandum also discusses the end-use of the product ("Valeo also argues that its T-series aluminum sheet is an

intermediate product…").  End-use, again, is a (k)(2) factor.

Commerce portrays its analysis of product characteristics as a review to determine whether Valeo's merchandise fits within the meaning of scope terms, but Commerce's analysis is to determine the scope terms in the first instance.   In its determination, Commerce engaged in extensive analysis of the series of aluminum alloys designated by the Aluminum Association, distinctions between clad and non-clad aluminum, and heat-treated and non-heat-treated products, to reach a determination that Valeo's merchandise at issue was subject merchandise.  Thus, Commerce relied on the physical characteristics to interpret the terms of the scope – not to determine whether Valeo's products meets those terms.

Commerce's discussions of physical characteristics, Aluminum Association publications, and various declarations were not dispositive, a fact that Commerce confirmed in its unlawful extensions.  In letters dated September 18, 2020, November 2, 2020, December 17, 2020, May 10, 2020, June 22, 2021, and August 6, 2021, Commerce stated, "In light of issues concerning key terms used in the scope of the Orders, we have determined that we shall require additional time to issue a ruling for this scope segment of the proceeding."  Commerce did not or was not able to define what is "clad," "heat-treated," and "3xxx-series based on the k(1) factors.

In making its purported (k)(1) determination, Commerce relied upon publications by the Aluminum Association and declarations of the Vice President of Standards and Technology for the Aluminum Association.  Commerce relied on those sources to define terms, such as "clad," "heat-treated," and "3xxx-series."  Those are not appropriate regulatory (k)(1) sources.  While courts have allowed relying on industry jargon to assess whether a term in the scope language is ambiguous, similar to relying on dictionary definitions, Commerce's analysis is beyond interpretation of a common meaning of a term.  *ArcelorMittal Stainless Belgium N.V. v. United*

*States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012).  ("{C}onsideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").  "Heat-treated" or "heat-treatable" are not terms in the scope language to interpret.  Concerning "clad" and "3xxx-series," Commerce's analysis involved connecting various publications and declarations in its attempt to discern a dispositive meaning.  Finally, the declarations are not an appropriate source because they are not publicly available sources which define a common meaning similar to dictionary definitions.

Finally, Commerce did not even try to claim that it considered all of the applicable (k)(1) factors, choosing instead to disregard required elements.  Most notably, Commerce failed to consider the Commission's determination, a required k(1) element.

The determination by the Commission was a central element in Valeo's scope ruling request.  Indeed, as outlined by Valeo in its scope ruling request and multiple submissions of additional information, Valeo's T-series alloy is a heat-treatable and heat-treated alloy.  The Commission's findings and exclusion of heat-treatable alloys from its injury analysis is a critical factor in Valeo's scope ruling request.  The importance of this element was highlighted in *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1380 (Fed. Cir. 2008) (citation omitted). ("{A}llow{ing} Commerce to assess antidumping duties on products intentionally omitted from the {Commission's} injury investigation would frustrate the purpose of the antidumping laws.").  The Commission's findings are also an element required to be considered by Commerce, and Commerce's failure to do so renders its determination unlawful.

In that determination, the Commission stated that the "{a}luminum sheet subject to these investigations are of 1XXX, 3XXX, and 5XXX series alloys that are non-heat treatable." Additionally, the Commission stated that "heat-treated aluminum sheet (*e.g.*, 6xxx alloy series) is

not covered by Commerce's scope" and did not include heat-treated aluminum sheet in its injury determination.  Instead of following the regulatory mandate to consider determinations by the Commission, Commerce simply disregarded the Commission's determination.

Valeo explained to Commerce that the heat treatability of its product is permitted by the high silicon content in the outer layer and the high copper content in the center layer. Commerce, however, without defining "heat-treatable" in terms of chemical properties, defined it as a non-clad product.  According to Commerce, if a product is clad then it cannot be heat-treated.  And, finding Valeo's product to be clad, Commerce determined that Valeo's product as a whole, including its individual layers, are not-heat treated.  Commerce neither provided a lawful definition of "heat-treatable" nor is its decision that Valeo's product is not heat-treatable supported by substantial evidence.

Moreover, the Domestic Industry Producers conceded that heat-treated products are excluded in the recent petitions on common alloy aluminum sheet from certain countries other than China.  The same declarant who provided declarations in this case, also provided declarations in those petitions.  *See* Memorandum to the File, *Factual Information Relevant to the Final Scope Ruling Determinaion: Valeo's Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) at Attachment 6, Exhibit GEN-3.  Based on those declarations, the Domestic Industry Producers, explained that a specific Harmonized Tariff Schedule of the United States ("HTSUS") subheading was created for reporting of out-of-scope heat-treated products.  *Id.* at Attachment 6, p.11.  The HTSUS subheading 7606.12.3090 was subdivided into subheadings 7606.12.3091 and 7606.12.3096 for out-of-scope heat-treated and in-scope aluminum sheet, respectively.  Statistical Note 6 to Chapter 76 provides that "heat-treatable industrial alloys" refer to "aluminum containing by weight 3.0 percent or less of

magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloys."  *See* Letter from Crowell & Moring to Sec'y of Commerce, *Request for Additional Information*, Case Nos. A-570-073; C-570-074 (Mar. 23, 2021) at Exhibit SUPP-4, 76-3.  Thus, the Domestic Industry Producers themselves agree that heat-treated products to be outside the scope of the antidumping and countervailing duty orders.  Valeo's product not only contains the added elements, such as copper and silicon, which give the T-series aluminum sheet the chemical characteristics making it heat-treatable, Valeo's product also does not exceed the limitations set by the HTSUS for heat-treated out-of-scope products.  Commerce's failure to meaningfully consider the Commission determination – a required (k)(1) element – renders the determination unlawful.

Given the above, Defendant's assertion that Valeo's complaint is moot must be dismissed.  The nature of Count One is to compel Commerce to issue a lawful k(1) scope ruling or initiate a formal k(2) scope inquiry in accordance with the regulatory timeline.  Commerce has neither initiated a formal scope inquiry nor issued a lawful scope ruling.

Count Two requests this Court to issue a declaratory judgment that Commerce's extensions of the regulatory deadline were *ultra vires* because Commerce lacked "good cause" for the extensions and further inquiry was available to Commerce through initiation of a formal scope inquiry under 19 C.F.R. § 351.225(e).  Commerce has continued to refuse to issue a scope determination in accordance with the law and has not articulated that a good cause exists for this continued failure.

Valeo has a "live" and "legally cognizable interest in the outcome" of both counts.  *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotations and citations omitted).  Defendant's only issue with the mootness of the claims is the jurisdictional basis for the claims.

With this motion Valeo seeks submission of amended Summons and Complaint to substitute the jurisdictional basis for some of its current claims (*i.e.* Count One) that Commerce should have issued a lawful scope ruling or initiated a formal scope inquiry and bring additional claims under this Court's jurisdiction in 28 U.S.C. § 1581(c) against the substance of the Decision Memorandum.  The Count Two claim that this Court should issue a declaratory judgment that Commerce lacked "good cause" to extend the regulatory deadlines continues to be a legally cognizable claim under § 1581(i) jurisdiction.  The Declaratory Judgment Act does not establish an independent grant of jurisdiction to the Court to review the subject matter of the action.  *PPG Industries, Inc. v. United States*, F. Supp. 650, 655 (Ct. Int'l Trade 1988).  Rather, it provides "for additional remedies where jurisdiction has already been confirmed by statute."  *Id*. (citations omitted).  That Commerce's extensions lacked "good cause" is reviewable under 28 U.S.C. § 1581(i)(1)(D) which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)–(h) of this section."  Commerce's decisions to violate the regulatory deadlines concern "{a} determination by the administering authority as to whether a particular type of merchandise is within the class of kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order."  *See* 19 U.S.C. § 1516a(a)(2)(B)(vi).  Jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi) concerning scope determinations is not available because Commerce's decisions to extend and not issue a scope ruling were the opposite of issuing a scope ruling that is reviewable under § 1516a(a)(2)(B)(vi).  Thus, the statute grants this Court with the section 1581(i) jurisdiction, and 28 U.S.C. § 2201(a) provides for the remedy in the form of a

declaratory judgment for the lack of good cause claim.

**B. Amended Summons and Complaint Will Serve Justice and the Judicial Economy**

Valeo moves to amend the Summons, Complaint, and Form 5 (informational statement) pursuant to USCIT Rules 3(e) and 15(a) to substitute the jurisdictional basis for its claims and to present new claims arising out of Commerce's Decision Memorandum.  With respect to the counts, the proposed Amended Complaint retains the nature of both counts but expands on Count One to include specific instances of Commerce's determination being unlawful or unsupported by substantial evidence.  As discussed above, and argued by Defendant, "Once an adverse scope ruling is obtained, a complaint may be filed with the CIT pursuant to that court's jurisdiction under § 1581(c)."  *Sunpreme Inc. v. United States*, 892 F. 3d 1186, 1193 (Fed. Cir. 2018).

Rule 3(e) of this Court states that this Court "may allow a summons to be amended at any time on such terms as it deems just, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the amendment is allowed."  Valeo would continue suffering injustice in the form of delays if this Court were not to grant Valeo's motion to amend the jurisdictional basis for its claims that Commerce's tardy scope ruling altered.  Without proper jurisdictional basis, Defendant's motion to dismiss could proceed, resetting the clock for Valeo to obtain relief once again.  Of significance is that the jurisdictional basis in Valeo's complaint was not defective, rather Commerce's tardy scope ruling alters the legal analysis by making section 1581(c) jurisdiction available.

USCIT Rule 15(a) states that this Court "should freely give leave when justice so requires" to amend a pleading.  USCIT R. 15(a)(2); *see also Intrepid v. Pollock*, 907 F.2d 1125, 1129 (Fed. Cir. 1990).  This Court has stated that "{a}bsent any dilatory motive, undue cause for delay, repeated failures to cure deficiencies by amendments, futility of amendment, or undue

prejudice to the opposing party, leave to amend should be liberally given." *Giorgio Foods, Inc. v. United* States, 515 F. Supp. 2d 1313, 1316-17 (Ct. Int'l Trade 2007) (citation omitted).  As discussed above, justice requires that Valeo be afforded relief from an unlawful scope ruling. The issuance of the Commerce's determination gives additional grounds for Valeo to challenge the factual findings and the legal conclusions of that Scope Ruling.  None of the Court's concerns in *Giorgio Foods* are present in this case.  Thus, Valeo should be afforded the opportunity to amend its Complaint and Form 5.  Valeo's claims arising out of the factual findings and the legal conclusions of the Scope Ruling are timely because a plaintiff must commence an action under 28 U.S.C. § 1581(c) within thirty days after mailing of the scope ruling.  19 U.S.C. § 1516a(2).  The Scope Ruling was mailed on October 15, 2021.  Thus, this Court should afford until November 15, 2021, the next business day after thirty days, for Valeo to file its Amended Complaint and Summons.  The proposed Amended Complaint, Summons, and Form 5 are provided below.

Amended Summons and Complaint will serve the judicial economy because this Court is now familiar with some of the factual background of the controversy and a judge has been assigned to the case.

The amendments are summarized in the following chart.

| Amended Document | Page No. |
|---|---|
| Summons | Form 4 changed to Form 3 |
| Complaint | All pages |
| Form 5 Information Statement | 1, 2 |

**C.  Alternatively, Valeo Moves to Consolidate This Case with Court No. 21-00581**

Pursuant to USCIT Rule 42, Valeo respectfully requests that the Court consolidated the following cases under the lead case, Valeo *North America, Inc. v. United States*, Court No. 21-00426:

- *Valeo North America, Inc. v. United States*, Court No. 21-00426; and

- *Valeo North America, Inc. v. United States*, Court No. 21-00426.

Valeo's counsel consulted with counsel for Defendant United States concerning this Motion.

Pursuant to USCIT Rule 42, "{i}f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Court Nos. 21-00426 and 21-00581 challenge Commerce's failure to issue a scope ruling based upon Valeo's application pursuant to 19 C.F.R. § 351.225(k)(1) or to initiate a formal scope inquiry to consider the additional (k)(2) factors.  The difference between the two actions is that Court No. 21-00426 also challenges Commerce's extensions for making a decision to be lacking a good cause.  Both Court Nos. involve common questions of law and fact.  Consolidation of these cases will reduce the number of duplicative filings and, therefore, will promote judicial efficiency and conserve resources for the parties.  Thus, we respectfully request that should the Court deny Valeo's motion for the amendments, this Court grant the motion for consolidation.

Respectfully submitted,

Dated:  November 15, 2021

Daniel Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

VALEO NORTH AMERICA, INC.,

               Plaintiff,

      v.

UNITED STATES OF AMERICA,

               Defendant.

Court No. 21-00426

## {PROPOSED} ORDER

Upon consideration of the Motion to Dismiss by Defendant United States, response of Plaintiff, Valeo North America, Inc. ("Valeo"), Valeo's Motion to Amend summons, complaint, and Form 5, and Valeo's Motion for the Consolidation of Court Nos. 21-00426 and 21-00581, and all papers and proceedings herein, it is hereby

ORDERED that Plaintiff's motion to amend the summons, complaint, and Form 5 is GRANTED;

ORDERED that Plaintiff's summons (ECF No. 1), complaint (ECF No. 2), and Form 5 (ECF No. 3) are replaced by the attached and revised Amended Summons, Amended Complaint, and Amended Form 5;

ORDERED that Plaintiff's motion for the consolidation is DENIED; and it is further

ORDERED that Defendant's motion to dismiss is DENIED.

SO ORDERED.

Dated: _____, 2021
     New York, New York

_____
Honorable Mark A. Barnett, Chief Judge

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE MARK A. BARNETT, CHIEF JUDGE

| | |
|---|---|
| VALEO NORTH AMERICA, INC., | |
| Plaintiff, | Court No. 21-00426 |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## {PROPOSED} ORDER

Upon consideration of the Motion to Dismiss by Defendant United States, response of Plaintiff, Valeo North America, Inc. ("Valeo"), Valeo's Motion for the Consolidation of Court Nos. 21-00426 and 21-00581, and Valeo's Motion to Amend summons, complaint, and Form 5, and all papers and proceedings herein, it is hereby

ORDERED that Plaintiff's motion for the consolidation is GRANTED;

ORDERED that the following cases shall be consolidated under *Valeo North America, Inc. v. United States*, Court No. 21-00426:

- *Valeo North America, Inc. v. United States*, Court No. 21-00426; and
- *Valeo North America, Inc. v. United States*, Court No. 21-00426;

ORDERED that Plaintiff's motion to amend is DENIED; and it is further

ORDERED that Defendant's motion to dismiss is DENIED.

SO ORDERED.

Dated: _____, 2021        _____
        New York, New York                        Honorable Mark A. Barnett, Chief Judge

FORM 3-1

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

VALEO NORTH AMERICA, INC.,

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

AMENDED SUMMONS

Court No. 21-00426

**TO:** The Attorney General and the Department of Commerce:

**PLEASE TAKE NOTICE** that a civil action has been commenced pursuant to 28 U.S.C. § 1581(c) to contest the determination described below.



/s/ Mario Toscano
Clerk of the Court

1.  Valeo North America, Inc. ("Valeo") is an importer of aluminum alloy sheet from China.  Valeo participated in the scope proceeding that is the subject of this action through submission of the scope ruling requests, questionnaire responses, and arguments.  Valeo therefore is an interested party and party to the proceeding within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).
    (Name and standing of plaintiff)

2.  Valeo certain aspects of Commerce's unpublished decision memorandum.  *See* Memorandum, from Frank Schmitt, Case Analyst, Office VI, AD/CVD Operations, to Scot Fullerton, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, Antidumping and Countervailing Duty Orders on Aluminum Sheet from the People's Republic of China; Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) (ACCESS Barcode: 4172205-01).
    (Brief description of contested determination)

3.  October 15, 2021

(Date of determination)

4.   n/a
    (If applicable, date of publication in Federal Register of notice of contested determination)


Dated:  November 15, 2021

Daniel Cannistra
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com

FORM 3-2

## SERVICE OF SUMMONS BY THE CLERK

If this action, described in 28 U.S.C. § 1581(c), is commenced to contest a determination listed in section 516A(a)(2) or (3) of the Tariff Act of 1930, the action is commenced by filing a summons only, and the clerk of the court is required to make service of the summons. For that purpose, list below the complete name and mailing address of each defendant to be served.

Attorney-in-Charge
International Trade Field Office
Commercial Litigation Branch
**U.S. Department of Justice**
26 Federal Plaza, Room 346
New York, New York 10278

Supervising Attorney Commercial
Litigation Branch Civil Division
**U.S. Department of Justice**
1100 L Street NW, Room 12124
Washington, DC 20530

General Counsel
**U.S. Department of Commerce**
1401 Constitution Avenue NW
Washington, DC 20230

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

VALEO NORTH AMERICA, INC.,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Court No. 21-00426

## AMENDED COMPLAINT

Plaintiff, Valeo North America, Inc. ("Valeo"), a U.S. manufacturer of automotive heating and cooling systems and an importer of certain heat-treated T-series aluminum sheet, by and through its counsel, brings this action against the United States.  Plaintiff alleges and states as follows:

### <u>Introduction</u>

1.     Valeo is part of the Valeo Group, a global designer, manufacturer and supplier of auto parts with manufacturing facilities, research and design centers, and sales and distribution offices in over thirty countries.  In the United States, Valeo manufactures automotive heating and cooling systems and imports certain heat-treated T-series aluminum sheet from the People's Republic of China ("China") to manufacture components for automotive heat exchangers as well as heat, ventilation and air conditioning systems.

2.     Certain antidumping and countervailing duty orders cover certain aluminum common alloy sheet from China.  *See Common Alloy Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce February 8, 2019) (antidumping duty order), and 84 Fed. Reg. 2,157 (Dep't of Commerce February 6, 2019) (countervailing duty order) (collectively, the "Orders").

3.      Within 45 days of the date of receipt of an application for a scope ruling,

Commerce is required by regulations to either (1) issue a final ruling under 19 C.F.R.

§351.225(d) (April 1, 2021), *i.e.*, a ruling based upon the scope ruling application and

descriptions of merchandise referred to in 19 C.F.R. §351.225(k)(1), or (2) initiate a scope

inquiry under 19 C.F.R. §351.225(e), *i.e.*, considering additional factors under 19 C.F.R.

§351.225(k)(2).  *See* 19 C.F.R. §351.225(c)(2).

4.      Valeo submitted a scope ruling request to the U.S. Department of Commerce

("Commerce"), on May 1, 2020. demonstrating that heat-treated T-series sheet is outside the

scope of the Orders.  *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common

Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-

Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (May 1, 2020) (ACCESS

Barcode: 3970516-01) ("1st Scope Ruling Request").

5.      On June 5, 2020, August 7, 2020, and March 24, 2021, Valeo provided

supplemental information to Commerce in response to inquiries from Commerce.  *See* Letter

from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the

People's Republic of China: Request for Scope Ruling on Heat-Treated T-Series Aluminum

Sheet*, Case Nos. A-570-073; C-570-074 (June 5, 2020) (ACCESS Barcode: 3982800-01) ("2nd

Scope Ruling Request"); Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common

Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling and

Response to Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos.

A-570-073; C-570-074 (August 7, 2020) (ACCESS Barcode: 4013607-01) ("3rd Scope Ruling

Request"); Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum

Sheet from the People's Republic of China: Request for Additional Information*, Case Nos. A-

570-073; C-570-074 (March 23, 2021) (ACCESS Barcode: 4102655-01) ("4th Scope Ruling

Request") (submitted after hours and considered to be a submission of March 24).

6.      In response to Valeo's scope ruling requests, Commerce neither issued a final

scope ruling based upon application and factors under 19 C.F.R. §351.225(k)(1) nor initiated a

formal scope inquiry to consider additional factors under 19 C.F.R. §351.225(k)(2) within the

required time limit.  Instead, Commerce either rejected Valeo's scope ruling requests, resetting

the 45-day deadline, or extended the deadline under 19 C.F.R. §351.302(b) ("Unless expressly

precluded by statute, {Commerce} may, for good cause, extend any time limit established by this

part.").

7.      On June 3, 2020, Commerce rejected Valeo's first scope ruling application for

containing errors related to bracketing of business proprietary information, company

certification, and certificate of service.  *See* Letter from Commerce to Crowell & Moring LLP,

*Rejection of Requests for a Scope Inquiry on Heat-Treated T-Series Aluminum Sheet*, Case Nos.

A-570-073; C-570-074 (June 3, 2020) (ACCESS Barcode: 3981743-01) ("1st Rejection of Scope

Ruling Request").

8.      On July 20, 2020, Commerce rejected Valeo's second scope ruling application

filed on June 5, 2020, and issued supplemental questions for Valeo to respond to when

resubmitting its application.  *See* Letter from Commerce to Crowell & Moring LLP, *Common*

*Alloy Aluminum Sheet from the People's Republic of China: Supplemental Questionnaire on*

*Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (July 20, 2020)

(ACCESS Barcode: 4003318-01) ("2nd Rejection of Scope Ruling Request").  In its

supplemental questionnaire, Commerce stated that "the record of this scope inquiry does not

currently contain all information required to make a scope ruling."  Furthermore, Commerce

requested information concerning the "heat treatment and/or annealing process which the heat-treated T-series aluminum sheet undergoes," the "distinction between 'heat treatment' and 'annealing' for Valeo's T-series aluminum sheet," when heat-treatment or annealing occurs in the production process, and whether in the production of heat-treated T-series aluminum sheet "the temperature of the aluminum sheet {is} increased to temperatures at or above 850° Fahrenheit." *Id.* at 4.

9.      On August 7, 2020, Valeo submitted its third scope ruling application and included responses to Commerce's supplemental questions. *See* 3rd Scope Ruling Request.

10.      On September 18, 2020, Commerce extended the 45-day regulatory deadline by 45 days for "good cause." *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Sept. 18, 2020) (ACCESS Barcode: 4029697-01) (extension of scope ruling). On November 2, 2020, Commerce extended the deadline again by 45 days for "good cause." *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Nov. 2, 2020) (ACCESS Barcode: 4047583-01) (extension of scope ruling). On December 17, 2020, Commerce extended that deadline again by 45 days for "good cause" to February 3, 2021. *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Dec. 17, 2020) (ACCESS Barcode: 4066396-01) (extension of scope ruling).

11.      On February 3, 2021, Commerce again rejected Valeo's scope ruling application and issued another supplemental questionnaire to be submitted with the next application. *See* Letter from Commerce to Crowell & Moring LLP, *Common Alloy Aluminum Sheet from the People's Republic of China: Second Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Feb. 3, 2021) (ACCESS Barcode: 4083979-01) ("3rd Rejection of Scope Ruling Request").

12.     Notwithstanding its failure to its failure to issue a scope ruling under 19 C.F.R. §

351.225(k)(1) or initiate a formal scope inquiry pursuant to 19 C.F.R. § 351.225(k)(2) as

required by its regulations, Commerce's supplemental questions revealed that it had transitioned

into an analysis of the (k)(2) factors, *e.g.*, the physical characteristics of the product. *Id.*

13.     On March 24, 2021, Valeo submitted its fourth scope ruling application, this time

requesting a formal scope ruling for consideration of the factors under 19 C.F.R. §351.225(k)(2)

("(k)(2)" factors). *See* 4th Scope Ruling Request.

14.     Commerce extended its 45-day deadline for "good cause" three times: first on

May 10, again on June 22, and then yet again on August 6, 2021.    *See* Letter from Commerce to

Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (May 10, 2021) (ACCESS Barcode:

4119631-01) ("1st Extension on 4th Scope Ruling Request"); Letter from Commerce to Crowell

& Moring LLP, Case Nos. A-570-073; C-570-074 (June 22, 2021) (ACCESS Barcode: 4135945-

01) ("2nd Extension on 4th Scope Ruling Request");Letter from Commerce to Crowell & Moring

LLP, Case Nos. A-570-073; C-570-074 (Aug. 6, 2021) (ACCESS Barcode: 4150473-01) ("3rd

Extension on 4th Scope Ruling Request").  None of the extension letters detailed the basis for the

"good cause" justifying the extensions.

15.     On August 17, 2021, Valeo filed its original Complaint with this Court

challenging Commerce's lack of good cause for serially violating the regulatory deadlines that

resulted in an unreasonable delay of either the issuance of a scope ruling based upon the

application under 19 C.F.R. § 225(d) or the initiation of a scope inquiry under 19 C.F.R. §

225(e).

16.     On September 20, 2021, Commerce extended the deadline again by 45 days for

"good cause" to November 4, 2021. *See* Letter from Commerce to Crowell & Moring LLP, Case

Nos. A-570-073; C-570-074 (Sept. 20, 2021) (ACCESS Barcode: 4162459-01) ("4th Extension on 4th Scope Ruling Request").

17.     On October 15, 2021, Commerce issued a memorandum asserting that Valeo's T-series aluminum was in scope.  Commerce's determination was issued in an unpublished memorandum.  *See* Memorandum, from Frank Schmitt, Case Analyst, Office VI, AD/CVD Operations, to Scot Fullerton, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Antidumping and Countervailing Duty Orders on Aluminum Sheet from the People's Republic of China; Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) (ACCESS Barcode: 4172205-01) ("Decision Memorandum").

### Administrative Decision To Be Reviewed

18.     Valeo brings this action to contest Commerce's failure to issue a final scope ruling based upon an application and (k)(1) factors and not to initiate a formal scope ruling to consider (k)(2) factors within the regulatory time period.

19.     Valeo also brings this action to contest Commerce's four extensions of the deadline to decide concerning Valeo's fourth scope ruling request.

### Jurisdiction

20.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(D), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)–(h) of this section."  *See* 28 U.S.C. § 1581(i).

21.    Commerce's extensions lacking good cause constituted an administration and enforcement of a matter referred to in subsection (c) of 28 U.S.C. § 1581 (for actions commenced under 19 U.S.C. § 1516a) because Commerce's decisions concern "{a} determination by the administering authority as to whether a particular type of merchandise is within the class of kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." *See* 19 U.S.C. § 1516a(a)(2)(B)(vi).

22.    Jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi) concerning scope determinations is not available because Commerce's decisions  to extend and not issue a scope ruling were the opposite of issuing a scope ruling that is reviewable under § 1516a(a)(2)(B)(vi).

### Standing

23.    Valeo has standing under 28 U.S.C. § 2631(i) because it has been adversely affected or aggrieved by Commerce's decisions not to issue a timely scope determination based upon Valeo's scope ruling application and not to initiate a formal scope inquiry.

24.    Valeo is an importer of aluminum alloy sheet from China.  Valeo participated in the scope proceeding that is the subject of this action through submission of the scope ruling requests, questionnaire responses, and arguments.  Valeo is therefore an interested party and party to the proceeding within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

### Timeliness

25.    A plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

26.     Valeo contests Commerce's May 10, 2021, decisions (1) not to issue a timely scope determination based upon Valeo's fourth scope ruling request, including responses to two prior supplemental questionnaires, and (2) not to initiate a formal scope inquiry to issue a scope determination based upon the additional (k)(2) factors.  Valeo also contests Commerce's May 10, June 22, August 6, and September 20, 2021, decisions to extend the deadline for making a decision concerning Valeo's fourth scope ruling request.

27.     This action is timely because it is filed within two years of May 10, June 22, August 6, and September 20, 2021.

28.     A plaintiff must commence an action under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi) "{w}ithin thirty days after – the date of mailing of a determination described in clause (vi) of subparagraph (B)" {*i.e.*, a determination as to "whether a particular type of merchandise is within the class or kind of merchandise"}.  Commerce mailed its determination on October 15, 2021.  This action is timely because it is commenced within thirty days of October 15, 2021, by filing the Form 3 summons with the clerk of the Court and amended complaint.

## **Background**

29.     Paragraphs 1 to 28 are incorporated herein by reference.

30.     The Orders covering certain aluminum common alloy sheet from China were issued in February 2019.  The plain language of the Orders provides that the scope covers both clad (*i.e.* multi-alloy) and un-clad aluminum sheet, but specifies that the covered un-clad sheet is "manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association," and the covered clad sheet is produced from a 3XXX-series core, "to which cladding layers are applied to either one or both sides of the core."  *Common Alloy Aluminum*

*Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce February 8, 2019) (antidumping duty order).

31.     Valeo submitted four successive scope ruling requests arguing that its heat-treated T-series aluminum sheet is not covered by the scope of the Orders because they are not manufactured from a designated 1XXX-, 3XXX-, or 5XXX-series alloy.  *See* 1st Scope Ruling Request; 2nd Scope Ruling Request; 3rd Scope Ruling Request; 4th Scope Ruling Request. Additionally, Valeo argued that heat-treated T-series aluminum sheet is not covered by the scope of the Orders because the underlying investigation did not encompass alloys that are heat treated. *Id.*

32.     Valeo's fourth scope ruling application included responses to two supplemental questionnaires with detailed data regarding the physical properties of Valeo's product, that are to be analyzed pursuant to 19 CFR 351.225(k)(2)(i) ("{t}he physical characteristics of the product"). The physical characteristics submitted by Valeo at the Department's request extend beyond the "descriptions of the merchandise" contained in the petition, the original investigation, and prior de contained in the petition, the original investigation, and prior determinations by Commerce (including prior scope determinations) and the U.S. International Trade Commission ("Commission") under 19 C.F.R. §351.225(k)(1).  *See* 4th Scope Ruling Request.

33.     Commerce refused to issue a scope ruling based upon Valeo's application pursuant to 19 C.F.R. § 351.225(k)(1) and yet also refused to initiate a formal scope inquiry to consider the additional (k)(2) factors, notwithstanding the fact that it requested and analyzed (k)(2) factors.  *See* 1st Extension on 4th Scope Ruling Request; 2nd Extension on 4th Scope Ruling Request; 3rd Extension on 4th Scope Ruling Request; 4th Extension on 4th Scope Ruing Request.

34.     In its Decision Memorandum, Commerce determined that Valeo's heat-treated T-series aluminum sheet are clad sheet with a 3xxx-series core as designated by the Aluminum Association and thus covered by the scope of the orders.  Commerce engaged in extensive analysis of the series of aluminum alloys designated by the Aluminum Association, distinctions between clad and un-clad aluminum, and heat treated and non-heat-treated products, to reach its determination that Valeo's merchandise was subject to the Orders.  Commerce relied on its analysis of the physical characteristics of the product rather than simply relying on the description and scope language, thus revealing that it was in fact conducting a "(k)(2)" analysis despite not having initiated the requisite inquiry.

35.     Commerce relied on the physical characteristics to interpret the terms of the scope – not to determine whether Valeo's products meets those terms.

36.     Commerce also discussed the end use of the product, again suggesting a "(k)(2)" analysis.  Decision Memorandum at 20 ("Valeo also argues that its T-series aluminum sheet is an intermediate product….").

37.     Commerce defined a "clad" product as one consisting of a core and metallurgically bonded layers wherein some diffusion between the core and each layer takes place.  *Id.* at 12.  Commerce then concluded that clad and "heat-treated" are mutually exclusive but provided no support for this conclusion. Commerce misinterpret the associated technical terms.  What it defined as "cladding" is actually diffusion-annealing, which is not the same as cladding.

38.     Without determining the extent to which "some" diffusion converts clad into non-clad alloy, Commerce found that Valeo's heat-treated T-series aluminum sheet are clad because the manganese content is higher near the center and the silicon content is higher near the surface

of the product after the heat treatment.  *Id* at 11.  Commerce provided no explanation of how these facts supported this conclusion.

39.     Commerce found that the Aluminum Association does not have a 3xxx-series alloy identical to Valeo's product.  *Id.* at 14.

40.     Commerce interpreted that 3xxx-series alloy means any alloy with manganese as the main alloying element.  To make this interpretation, Commerce relied on the Aluminum Association's publications and declarations of the Vice President of Standards and Technology for the Aluminum Association submitted by certain domestic producers in the proceeding at issue.  *See* Decision Memorandum at 11.  Commerce conflated the terms "group" and "series" to find that the first numerical digit designating a particular group based on primary alloying element meant that all aluminum sheet with primarily that alloying element belong to the series.  Commerce also determined that "as designated by the Aluminum Association" also means to include any aluminum sheet having major alloying element of manganese.  *Id.* at 14-15.

41.     Commerce determined that proprietary alloys can be classified by the Aluminum Association.  *Id*. at 13-14.  Commerce, however, did not consider that the Aluminum Association sets limits to what may be considered an "equivalent."  In the same publication upon which Commerce relied, the Aluminum Association provided the limits for the variations for the chemical elements.  Valeo's proprietary grade heat-treated T-series aluminum sheet does not meet those parameters to be considered an equivalent.  Commerce did not address these evidence and argument, nor did it explain or even attempt to explain how Valeo's product can be in scope notwithstanding the fact that it is not manufactured from a designated 1XXX-, 3XXX-, or 5XXX-series alloy as required by the scope of the Orders.

42.     Commerce refused to consider the meaning or significance of the word "common" in the applicable scope language. *Id.* at 21

43.     In conjunction with the Commission investigation investigation, a preliminary hearing was held before the International Trade Commission ("ITC") in December 2017.

44.     Valeo participated in the Commission's hearing, testifying that its T-series were not included within the scope of the Commission's investigation and that it did not meet the 3xxx specifications.  Valeo's testimony on these points was part of the administrative record.

45.     At the Commission's hearing, chemical specifications outlining the distinction between excluded heat-treatable alloys and in-scope heat-treatable alloys was publicly presented.

46.     In December 2018, Valeo filed a post-hearing brief reiterating the distinctions between alloys included and excluded from the investigation.

47.     At the conclusion of the investigation, the Commission unequivocally stated that "{a}luminum sheet subject to these investigations are of 1XXX, 3XXX, and 5XXX series alloys that are <u>non-heat treatable</u>." *See Common Alloy Aluminum Sheet from China, Inv. Nos. 701-TA-591 and 731-TA-1399 (Final)*, USITC Pub. No. 4861 (Jan. 2019) at I-11, I-12 (emphasis added). Additionally, the Commission stated that "heat-treated aluminum sheet (*e.g.*, 6xxx alloy series) is not covered by Commerce's scope." *Id.* (emphasis added).

48.     At the conclusion of the investigation, new Harmonized Tariff Schedule of the United States ("HTSUS") subheadings were created to capture out-of-scope heat-treatable alloys. HTSUS defines "heat-treatable" alloy as "aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloy."  *See* Letter from Crowell & Moring

to Sec'y of Commerce, *Request for Additional Information*, Case Nos. A-570-073; C-570-074 (Mar. 23, 2021) at Exhibit SUPP-4, 76-3.

49.     At the inception of a series of new investigations involving common alloys, identically defined, the petition notes that HTSUS subheading 7606.12.3091 covers "imports of out-of-scope heat-treatable sheet."  *See* Memorandum to the File, Factual Information Relevant to the Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) at Attachment 6, p.11 and Exhibit GEN-3.  This subheading provides for "{h}eat-treatable industrial alloys" described in Statistical Note 6 to Chapter 76, which is defined as "aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloys."

50.     It is uncontested that Valeo's T-series alloys meet the definition of a heat-treatable alloy as defined in the HTSUS and confirmed by the petitioners as capturing out-of-scope heat-treatable sheet.

51.     Commerce failed to consider that the Commission excluded heat-treatable aluminum sheet from its injury analysis and improperly disregarded the Commission's determination on the issue, finding that the two referenced statements are contradictory.

52.     The Commission's statements are not contradictory; rather, they yield the logical conclusion that registered alloys prefaced with a 3 (*i.e.*, not heat-treatable alloys) are included in Commerce's scope and the International Trade Commission's injury analysis, but heat-treated alloys that are not registered alloys (or variants thereof) are excluded from the International Trade Commission's injury analysis and the scope of the Orders.

53.     The designation system cited by Commerce is inapplicable to unregistered alloys. The header prefacing the grouping system cited by Commerce notes that "{a} numerical designation assigned in conformance with this Recommendation should <u>only</u> be used to indicate an aluminum or an aluminum alloy having chemical composition limits <u>identical</u> to <u>those registered</u> with the Signatories to the Declaration of Accord on an International Alloy Designation System for Wrought Aluminum and Wrought Aluminum Alloys.  *See* 4th Scope Ruling Request at Attachment III, Attachment 1, Exhibit 3, p.28 (emphasis added).

54.     Commerce disregarded that header and instead wrongly applied the numerical designation system to an alloy that does not feature chemical composition limits within the parameters of those registered with the signatories.

55.     Commerce stated that "Valeo has not demonstrated that ITC's statement regarding the scope of the *Orders* not covering heat-treatable alloys was applicable to 1xxx, 3xxx, and 5xxx-series alloys that the ITC explicitly stated were included in the scope of the *Orders*." *Id.* at 17-18.  This presupposes that Valeo's products fell within one of the enumerated alloy series (which as noted above they did not) and at a minimum should have been examined in the contest of a (k)(2) analysis.

## STATEMENT OF CLAIMS

### Count One

56.     Paragraphs 1 to 55 are incorporated herein by reference.

57.     Commerce concedes that it relied on information outside the (k)(1) factors and cannot claim that it was merely soliciting information not dispositive to its determination.

58.     The extensive discussion of heat-treatability demonstrates that the physical characteristics of the product (a k(2) factor) were central to its analysis.  Commerce's

memorandum also discusses the end use of the product ("Valeo also argues that its T-series aluminum sheet is an intermediate product…").  End-use, again, is a (k)(2) factor.

59.     Pursuant to 19 C.F.R. § 351.225(e) and (k)(2), if Commerce finds that the issue of whether a product is included within the scope of an order cannot be determined based solely upon the application and the description of the merchandise in (k)(1) sources, Commerce is obliged to initiate a scope inquiry.

60.     Commerce's failure to either rely on a (k)(1) analysis or initiate a scope inquiry to consider the (k)(2) factors was not in accordance with the law.

## Count Two

61.     While the (k)(1) sources may guide the interpretation, "they cannot substitute for language in the order itself." *Duferco Steel, Inc. v. United States*, 296 F. 3d 1087, 1097 (Fed. Circ. 2002); *see also Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) (holding that Commerce '"interpreted"' the order contrary to its terms by determining that beveled edges were not necessary for inclusion in the scope when the plain language was clear that they were).  Scope language must be read in a manner that is "informative and non-superfluous." *King Supply Co. v. United States*, 674 F.3d 1343, 1350 (Fed. Cir. 2012).

62.     If a term is not defined in by the scope language, the common meaning applies. See *OMG, INC. v. United States*, 972 F. 3d 1358, 1366 (Fed. Cir. 2020) (affirming U.S. Court of International Trade's reliance on dictionary definitions of a nail). Trade usage and industry jargon terms could also be considered for discerning a common meaning. *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012) ("{C}onsideration of

industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

63.     The plain language of the scope requires that aluminum sheet be "common" and "designated" within "3xxx-series," among others, by the Aluminum Association to be subject to the Orders.

64.     Commerce interpreted those terms in a way that is contrary to the Aluminum Association's publications, including those concerning "proprietary equivalents," aided by dictionary definition of "common," which demonstrate that not all aluminum sheet with primary alloying element of manganese is a 3xxx-series alloy.  Indeed, the Aluminum Association itself explicitly forecloses such as reading.  Valeo's T-series aluminum sheet is neither registered nor registrable as a 3xxx-series alloy because it does meet the chemistry requirement to be considered a proprietary equivalent as designated by the Aluminum Association.

65.     Commerce's decisions not to issue a scope ruling based upon Valeo's fourth, March 24, 2021, scope ruling application and the common meaning of the scope terms was not in accordance with the law.

## <u>Count Three</u>

66.     Paragraphs 1 to 65 are incorporated herein by reference.

67.     Commerce's regulations require that it consider the determinations of the Commission.  19 C.F.R. 355.225(k)(1).  "{A}llow{ing} Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation would frustrate the purpose of the antidumping laws."  *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1380 (Fed. Cir. 2008) (citation omitted).  "It is the responsibility of the agency, not those who

initiated the proceedings, to determine the scope of the final orders." *Duferco Steel*, 296 F.3d at 1097.

68.     Commerce's failure to account for the fact that the Commission determined that heat-treat treated products were not covered by the scope of the orders was not in accordance with the law.

## Count Four

69.     Paragraphs 1 to 68 are incorporated herein by reference.

70.     "Substantial evidence is more than a mere scintilla." *See Universal Camera v. National Labor Relations Board,* 340 U.S. 474, 477 (1951)*.*  "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *See Universal Camera v. National Labor Relations Board,* 340 U.S. 474, 488 (1951).  Commerce referred to no evidence on the record to support its finding that Valeo's heat-treated T-series aluminum sheet was not heat-treated.  Record evidence contained exhaustive documentation and technical information on this point, which was never rebutted.  Moreover, Commerce's own scope ruling memorandum acknowledges that Valeo's product at issue undergoes "thermal treatment."  Not only there is ample evidence on the record that Valeo's products are heat-treated, Commerce does not provide any support to find that they are not.

71.     "The reviewing court {}may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  However, the reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 43 (citation omitted).

72.     Commerce found that Valeo's heat-treated T-series aluminum was not heat-treated by presuming that clad and heat-treated products are mutually exclusive, not attempting to discern a definition of heat treatment, and shifting the burden to Valeo to demonstrate that its product is heat-treated without explaining its understanding of that term.

73.     Evidence on the record defines "heat-treated" and Valeo demonstrated that its T-series aluminum sheet met those definitions.

74.     Commerce's determination that Valeo's T-series aluminum sheet was not heat-treated was not supported by substantial evidence and Commerce's failure to define "heat-treated" was contrary to law.

### Count Five

75.     Paragraphs 1 to 74 are incorporated herein by reference.

76.     Commerce determined that clad products include those with "some diffusion" among the layers, and that "some diffusion" means any diffusion short of complete homogeneity.

77.     Neither the scope language, the Aluminum Association publications, nor (k)(1) factors support this interpretation.

78.     Commerce's interpretation of "clad" was contrary to the law.

### Count Six

79.     Paragraphs 1 to 78 are incorporated herein by reference.

80.     Although courts have allowed relying on industry jargon to assess whether a term in the scope language is ambiguous, similar to relying on dictionary definitions, Commerce's analysis here went beyond interpretation of a common meaning of a term. *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012).

("{C}onsideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

81.     Commerce's regulations provide for procedures to initiate formal scope inquiries to consider (k)(2) factors.  *See* 19 C.F.R. 351.225(e), (f) and (k)(2).

82.     Commerce primarily relied upon various publications by the Aluminum Association and declarations of the Vice President of Standards and Technology for the Aluminum Association.  Commerce relied on those sources to define various terms, such as "clad," "heat-treated," and "3xxx-series."  Those are not appropriate regulatory (k)(1) sources.

83.     Commerce's analysis involved connecting various publications and declarations in its attempt to discern a dispositive meaning.  These declarations were not an appropriate (k)(1) source because they are not the same type of publicly available sources, such as dictionary definitions or scientific authorities, which define a common meaning.  And, Commerce's analysis of the Aluminum Association publications went beyond defining a common meaning.

84.     Alternatively, Commerce's interpretations based on those sources were not dispositive when considering contradicting evidence in the same sources.

85.     Commerce's failure to initiate a formal scope ruling pursuant to its regulations was contrary the law.

## **Count Seven**

86.     Paragraphs 1 to 85 are incorporated herein by reference.

87.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  *Id.*

88.     Each of Commerce's four decisions to extend the deadline for deciding whether to issue a scope ruling based upon Valeo's fourth, March 24, 2021, scope ruling application or initiate a formal scope inquiry were claimed to be for a "good cause" pursuant to 19 C.F.R. §351.302(b).  *See* 1st Extension on 4th Scope Ruling Request; 2nd Extension on 4th Scope Ruling Request; 3rd Extension on 4th Scope Ruling Request; 4th Extension on 4th Scope Ruling Request.

89.     Commerce did not identify a good cause in each extension.  Commerce only provided a summary reasoning for the extension – "{i} light of issues concerning key terms used in the scope of the *Orders*" or, as stated in the latest extension, "issues with the information value provided to describe its product as part of its scope ruling application and large amount of material." *Id.*

90.     Issues with the "key terms used in scope of the Orders" are not a good cause to violate regulatory deadlines because issues with scope terms exist in virtually every scope ruling request.  Generally, that is why parties request a scope ruling – to "clarify the scope of an order." 19 C.F.R. §351.225.  If a good cause were to exist every time there were issues with the scope terms, "good cause" would lose any meaning.  Thus, Commerce lacked a good cause to extend the regulatory deadline each of the three times.

91.     Furthermore, the regulations envision that the issue may "warrant a further inquiry" and provide for the appropriate mechanism for initiating an official scope inquiry when Commerce cannot make its determination "based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1)."  19 C.F.R. §351.225(e).  Thus, issues with the scope terms are not a good cause for an extension but are a reason to initiate a formal scope inquiry.

92.     Valeo is therefore entitled to a declaratory judgment that Commerce's extensions of the regulatory deadline were *ultra vires* and contrary to law.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Valeo respectfully requests that the Court enter judgment:

1. Declaring that Commerce's May 10, June 22, August 6, and September 20, 2021, extensions of the regulatory 45-day time period – for either issuing a scope ruling based upon application pursuant to 19 C.F.R. §351.225(d) or initiating a formal scope inquiry pursuant to 19 C.F.R. §351.225(e) – were not for a "good cause."

2. Holding that the Decision Memorandum is unsupported by substantial evidence and not in accordance with law.

3. Remanding Commerce's determination at issue with instructions to issue a new determination consistent with the Court's opinion.

4. Ordering Commerce to make a determination pursuant to 19 C.F.R. §351.225(d) or initiate a formal scope inquiry pursuant 19 C.F.R. §351.225(e), and conduct the scope inquiry according to the regulations in effect at the time of the scope ruling application.

5. Providing such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  November 15, 2021

Daniel Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

VALEO NORTH AMERICA, INC.,

          Plaintiff,

      v.

UNITED STATES OF AMERICA,

          Defendant.

Court No. 21-00426

## AMENDED COMPLAINT

Plaintiff, Valeo North America, Inc. ("~~Valeo~~Valeo"), a U.S. manufacturer of automotive heating and cooling systems and an importer of certain heat-treated T-series aluminum sheet, by and through its counsel, brings this action against the United States. Plaintiff alleges and states as follows:

### Introduction

1. Valeo is part of the Valeo Group, a global designer, manufacturer and supplier of auto parts with manufacturing facilities, research and design centers, and sales and distribution offices in over thirty countries. In the United States, Valeo manufactures automotive heating and cooling systems and imports certain heat-treated T-series aluminum sheet from the People's Republic of China ("China") to manufacture components for automotive heat exchangers as well as heat, ventilation and air conditioning systems.

2. Certain antidumping and countervailing duty orders cover certain aluminum common alloy sheet from China. *See Common Alloy Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce February 8, 2019) (antidumping duty order), and 84 Fed. Reg. 2,157 (Dep't of Commerce February 6, 2019) (countervailing duty order) (collectively, the "Orders").

3.      Within 45 days of the date of receipt of an application for a scope ruling, Commerce is required by regulations to either (1) issue a final ruling under 19 C.F.R. §351.225(d) (April 1, 2021), *i.e.*, a ruling based upon the scope ruling application and descriptions of merchandise referred to in 19 C.F.R. §351.225(k)(1), or (2) initiate a scope inquiry under 19 C.F.R. §351.225(e), *i.e.*, considering additional factors under 19 C.F.R. §351.225(k)(2).  *See* 19 C.F.R. §351.225(c)(2).

3.4.    Valeo submitted a scope ruling request to the U.S. Department of Commerce ("Commerce"), on May 1, 2020. demonstrating that heat-treated T-series sheet is outside the scope of the Orders.  *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (May 1, 2020) (ACCESS Barcode: 3970516-01) ("1st Scope Ruling Request").

4.5.    On June 5, 2020, August 7, 2020, and March 24, 2021, Valeo provided supplemental information to Commerce in response to inquiries from Commerce.  *See* Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (June 5, 2020) (ACCESS Barcode: 3982800-01) ("2nd Scope Ruling Request"); Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Scope Ruling and Response to Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (August 7, 2020) (ACCESS Barcode: 4013607-01) ("3rd Scope Ruling Request"); Letter from Crowell & Moring LLP to Sec'y of Commerce, *Common Alloy Aluminum Sheet from the People's Republic of China: Request for Additional Information*, Case Nos. A-

570-073; C-570-074 (March 23, 2021) (ACCESS Barcode: 4102655-01) ("4th Scope Ruling

Request") (submitted after hours and considered to be a submission of March 24).

~~5.~~1.      ~~Within 45 days of the date of receipt of an application for a scope ruling,~~

~~Commerce is required by regulations to either (1) issue a final ruling under 19 C.F.R.~~

~~§351.225(d),~~ *i.e.* ~~a ruling based upon the scope ruling application and descriptions of~~

~~merchandise referred to in 19 C.F.R. §351.225(k)(1), or (2) initiate a scope inquiry under 19~~

~~C.F.R. §351.225(e),~~ *i.e.* ~~considering additional factors under 19 C.F.R. §351.225(k)(2).~~  *See* ~~19~~

~~C.F.R. §351.225(e)(2).~~

6.      In response to Valeo's scope ruling requests, Commerce neither issued a final

scope ruling based upon application and factors under 19 C.F.R. §351.225(k)(1) nor initiated a

formal scope inquiry to consider additional factors under 19 C.F.R. §351.225(k)(2) within the

required time limit.  Instead, Commerce either rejected Valeo's scope ruling requests, resetting

the 45-day deadline, or extended the deadline under 19 C.F.R. §351.302(b) ("Unless expressly

precluded by statute, {Commerce} may, for good cause, extend any time limit established by this

part.").

7.      On June 3, 2020, Commerce rejected Valeo's first scope ruling application for

containing errors related to bracketing of business proprietary information, company

certification, and certificate of service.  *See* Letter from Commerce to Crowell & Moring LLP,

*Rejection of Requests for a Scope Inquiry on Heat-Treated T-Series Aluminum Sheet*, Case Nos.

A-570-073; C-570-074 (June 3, 2020) (ACCESS Barcode: 3981743-01) ("1st Rejection of Scope

Ruling Request").

8.      On July 20, 2020, Commerce rejected Valeo's second scope ruling application

filed on June 5, 2020, and issued supplemental questions for Valeo to respond to when

resubmitting its application.  *See* Letter from Commerce to Crowell & Moring LLP, *Common Alloy Aluminum Sheet from the People's Republic of China: Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. ~~A-570-073 C-570-074 (July 20, 2020) (ACCESS Barcode: 4003318-01) ("2nd Rejection of Scope Ruling Request").~~A-570-073; C-570-074 (July 20, 2020) (ACCESS Barcode: 4003318-01) ("2nd Rejection of Scope Ruling Request"). In its supplemental questionnaire, Commerce stated that "the record of this scope inquiry does not currently contain all information required to make a scope ruling."  Furthermore, Commerce requested information concerning the "heat treatment and/or annealing process which the heat-treated T-series aluminum sheet undergoes," the "distinction between 'heat treatment' and 'annealing' for Valeo's T-series aluminum sheet," when heat-treatment or annealing occurs in the production process, and whether in the production of heat-treated T-series aluminum sheet "the temperature of the aluminum sheet {is} increased to temperatures at or above 850° Fahrenheit."  *Id.* at 4.

9.      On August 7, 2020, Valeo submitted its third scope ruling application and included responses to Commerce's supplemental questions ~~on its second scope ruling application.~~.  *See* 3rd Scope Ruling Request.

10.      On September 18, 2020, Commerce extended the 45-day regulatory deadline by 45 days for "good cause."  *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Sept. 18, 2020) (ACCESS Barcode: 4029697-01) (extension of scope ruling).  On November 2, 2020, Commerce extended the deadline again by 45 days for "good cause."  *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Nov. 2, 2020) (ACCESS Barcode: 4047583-01) (extension of scope ruling).  On December 17, 2020, Commerce extended that deadline again by 45 days for "good cause" to February 3,

2021.  *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073, C-570-074 (Dec. 17, 2020) (ACCESS Barcode: 4066396-01) (extension of scope ruling).

~~10.~~11.  On February 3, 2021, Commerce again rejected Valeo's scope ruling application and issued another supplemental questionnaire to be submitted with the next application.  *See* Letter from Commerce to Crowell & Moring LLP, *Common Alloy Aluminum Sheet from the People's Republic of China: Second Supplemental Questionnaire on Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073, C-570-074 (Feb. 3, 2021) (ACCESS Barcode: 4083979-01) ("3rd Rejection of Scope Ruling Request").

~~11.~~12.  Notwithstanding its failure to ~~initiation~~its failure to issue a scope ~~proceeding, Commerce was no longer considering the factors~~ruling under 19 C.F.R. § 351.225(k)(1) ~~to be dispositive because~~or initiate a formal scope inquiry pursuant to 19 C.F.R. § 351.225(k)(2) as required by its regulations, Commerce's supplemental questions revealed that it had transitioned into an analysis ~~under~~of the (k)(2) factors, *e.g.*, the ~~(k)(2) factors.~~physical characteristics of the product.  *Id.*

~~12.~~13.  On March 24, 2021, Valeo submitted its fourth scope ruling application, this time requesting a formal scope ruling for consideration of the factors under 19 C.F.R. §351.225(k)(2) ("(k)(2)" factors~~) but also reiterating that the case can be decided under the plain language of the scope of the Orders and analysis of factors under 19 C.F.R. §351.225(k)(1) ("(k)(1)" factors).~~).  *See* 4th Scope Ruling Request.

~~13.~~14.  ~~On May 10, 2021,~~Commerce extended ~~the~~its 45-day deadline ~~by 45 days~~for "good cause~~."~~" three times: first on May 10, again on June 22, and then yet again on August 6, 2021.   *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073, C-570-074 (May 10, 2021) (ACCESS Barcode: 4119631-01) ("1st Extension on 4th Scope Ruling Request~~")~~

(Forty-five days after March 24, 2021, is May 8, 2021; however, because that date was a Saturday, the deadline became Monday, May 10, 2021.).  On June 22, 2021, Commerce extended the deadline again by 45 days for "good cause." *See* ");  Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (June 22, 2021) (ACCESS Barcode: 4135945-01) ("2nd Extension on 4th Scope Ruling Request").  On August 6, 2021, Commerce extended the deadline again by 45 days for "good cause" to September 20, 2021.  *See* ");Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Aug. 6, 2021) (ACCESS Barcode: 4150473-01) ("3rd Extension on 4th Scope Ruling Request").  None of the extension letters detailed the basis for the "good cause" justifying the extensions.

15.     On August 17, 2021, Valeo filed its original Complaint with this Court challenging Commerce's lack of good cause for serially violating the regulatory deadlines that resulted in an unreasonable delay of either the issuance of a scope ruling based upon the application under 19 C.F.R. § 225(d) or the initiation of a scope inquiry under 19 C.F.R. § 225(e).

16.     On September 20, 2021, Commerce extended the deadline again by 45 days for "good cause" to November 4, 2021.  *See* Letter from Commerce to Crowell & Moring LLP, Case Nos. A-570-073; C-570-074 (Sept. 20, 2021) (ACCESS Barcode: 4162459-01) ("4th Extension on 4th Scope Ruling Request").

17.     On October 15, 2021, Commerce issued a memorandum asserting that Valeo's T-series aluminum was in scope.  Commerce's determination was issued in an unpublished memorandum.  *See* Memorandum, from Frank Schmitt, Case Analyst, Office VI, AD/CVD Operations, to Scot Fullerton, Associate Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, *Antidumping and Countervailing Duty Orders on Aluminum*

*Sheet from the People's Republic of China; Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet*, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) (ACCESS Barcode: 4172205-01) ("Decision Memorandum").

**Administrative Decision To Be Reviewed**

~~14.~~18.   Valeo brings this action to contest Commerce's failure to issue a final scope ruling based upon an application and (k)(1) factors and not to initiate a formal scope ruling to consider (k)(2) factors within the regulatory time period.

~~15.~~19.   Valeo also brings this action to contest Commerce's ~~three~~four extensions of the deadline to decide concerning Valeo's fourth scope ruling request.

**Jurisdiction**

~~16.~~20.   The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(D), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)–(h) of this section."  *See* 28 U.S.C. § 1581(i).

~~17.~~21.   Commerce's ~~above-described decisions~~extensions lacking good cause constituted an administration and enforcement of a matter referred to in subsection (c) of 28 U.S.C. § 1581 (for actions commenced under 19 U.S.C. § 1516a) because Commerce's decisions concern "{a} determination by the administering authority as to whether a particular type of merchandise is within the class of kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order."  *See* 19 U.S.C. § 1516a(a)(2)(B)(vi).

~~18.~~22.   ~~None of the other statutory provisions for the Court's jurisdiction apply to this action.  Particularly, jurisdiction~~Jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. §

1516a(a)(2)(B)(vi) concerning scope determinations is not available because Commerce's decisions ~~challenged in this action were~~ to extend and not issue a scope ~~determination and because~~ ruling were the ~~decisions were not mailed pursuant to 19 U.S.C.~~ opposite of issuing a scope ruling that is reviewable under § 1516a(a)(2)(~~A)(ii~~B)(vi).

**<u>Standing</u>**

~~19.~~23.  Valeo has standing under 28 U.S.C. § 2631(i) because it has been adversely affected or aggrieved by Commerce's decisions not to issue a timely scope determination based upon Valeo's scope ruling application and not to initiate a formal scope inquiry.

24.    Valeo is an importer of aluminum alloy sheet from China.  Valeo participated in the scope proceeding that is the subject of this action through submission of the scope ruling requests, questionnaire responses, and arguments.  Valeo is therefore an interested party and party to the proceeding within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action under 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(d).

**<u>Timeliness</u>**

~~20.~~25.  A plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

~~21.~~26.  Valeo contests Commerce's May 10, 2021, decisions (1) not to issue a timely scope determination based upon Valeo's fourth scope ruling request, including responses to two prior supplemental questionnaires, and (2) not to initiate a formal scope inquiry to issue a scope determination based upon the additional (k)(2) factors.  Valeo also contests Commerce's May 10, June 22, ~~and~~ August 6, and September 20, 2021, decisions to extend the deadline for making a decision concerning Valeo's fourth scope ruling request.

22.27.  This action is timely because it is filed within two years of May 10, 2021, June 22, and August 6, and September 20, 2021.

28.     A plaintiff must commence an action under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(A)(ii) and (B)(vi) "{w}ithin thirty days after – the date of mailing of a determination described in clause (vi) of subparagraph (B)" {*i.e.*, a determination as to "whether a particular type of merchandise is within the class or kind of merchandise"}.  Commerce mailed its determination on October 15, 2021.  This action is timely because it is commenced within thirty days of October 15, 2021, by filing the Form 3 summons with the clerk of the Court and amended complaint.

**Background**

23.29.  Paragraphs 1 to 2228 are incorporated herein by reference.

24.30.  The Orders covering certain aluminum common alloy sheet from China were issued in February 2019.  The plain language of the Orders provides that the scope covers both clad (*i.e.* multi-alloy) and not un-clad aluminum sheet, but specifies that the covered not un-clad sheet is "manufactured from a 1XXX-, 3XXX-, or 5XXX-series alloy as designated by the Aluminum Association," and the covered clad sheet is produced from a 3XXX-series core, "to which cladding layers are applied to either one or both sides of the core."  *Common Alloy Aluminum Sheet from the People's Republic of China*, 84 Fed. Reg. 2,813 (Dep't of Commerce February 8, 2019) (antidumping duty order).

25.31.  Valeo submitted four successive scope ruling requests arguing that its heat-treated T-series aluminum sheet is not covered by the scope of the Orders because they are not manufactured from a designated 1XXX-, 3XXX-, or 5XXX-series alloy.  *See* 1st Scope Ruling Request; 2nd Scope Ruling Request; 3rd Scope Ruling Request; 4th Scope Ruling Request.

Additionally, Valeo argued that heat-treated T-series aluminum sheet is not covered by the scope of the Orders because the underlying investigation indicates that the Orders would cover only thosedid not encompass alloys that are not heat- treated and non-heat treatable. *Id.*

26.32.  Valeo's fourth scope ruling application included responses to two supplemental questionnaires with detailed questionsdata regarding the physical properties of Valeo's product, whichthat are more properlyto be analyzed underpursuant to 19 CFR 351.225(k)(2)(i) ("{t}he physical characteristics of the product") that goes"). The physical characteristics submitted by Valeo at the Department's request extend beyond the "descriptions of the merchandise" contained in the petition, the original investigation, and prior de contained in the petition, the original investigation, and prior determinations by Commerce (including prior scope determinations) and the U.S. International Trade Commission ("Commission") under 19 C.F.R. §351.225(k)(1).  *See* 4th Scope Ruling Request.

27.33.  Commerce refused to issue a scope ruling based upon Valeo's application andpursuant to 19 C.F.R. § 351.225(k)(1) and yet also refused to initiate a formal scope inquiry to consider the additional (k)(2) factors, notwithstanding the fact that it requested and analyzed (k)(2) factors.  *See* 1st Extension on 4th Scope Ruling Request; 2nd Extension on 4th Scope Ruling Request; 3rd Extension on 4th Scope Ruling Request.; 4th Extension on 4th Scope Ruing Request.

34.     In its Decision Memorandum, Commerce determined that Valeo's heat-treated T-series aluminum sheet are clad sheet with a 3xxx-series core as designated by the Aluminum Association and thus covered by the scope of the orders.  Commerce engaged in extensive analysis of the series of aluminum alloys designated by the Aluminum Association, distinctions between clad and un-clad aluminum, and heat treated and non-heat-treated products, to reach its determination that Valeo's merchandise was subject to the Orders.  Commerce relied on its

analysis of the physical characteristics of the product rather than simply relying on the description and scope language, thus revealing that it was in fact conducting a "(k)(2)" analysis despite not having initiated the requisite inquiry.

35.    Commerce relied on the physical characteristics to interpret the terms of the scope – not to determine whether Valeo's products meets those terms.

36.    Commerce also discussed the end use of the product, again suggesting a "(k)(2)" analysis.  Decision Memorandum at 20 ("Valeo also argues that its T-series aluminum sheet is an intermediate product….").

37.    Commerce defined a "clad" product as one consisting of a core and metallurgically bonded layers wherein some diffusion between the core and each layer takes place.  *Id.* at 12.  Commerce then concluded that clad and "heat-treated" are mutually exclusive but provided no support for this conclusion. Commerce misinterpret the associated technical terms.  What it defined as "cladding" is actually diffusion-annealing, which is not the same as cladding.

38.    Without determining the extent to which "some" diffusion converts clad into non-clad alloy, Commerce found that Valeo's heat-treated T-series aluminum sheet are clad because the manganese content is higher near the center and the silicon content is higher near the surface of the product after the heat treatment.  *Id* at 11.  Commerce provided no explanation of how these facts supported this conclusion.

39.    Commerce found that the Aluminum Association does not have a 3xxx-series alloy identical to Valeo's product.  *Id.* at 14.

40.    Commerce interpreted that 3xxx-series alloy means any alloy with manganese as the main alloying element.  To make this interpretation, Commerce relied on the Aluminum

Association's publications and declarations of the Vice President of Standards and Technology for the Aluminum Association submitted by certain domestic producers in the proceeding at issue.  *See* Decision Memorandum at 11.  Commerce conflated the terms "group" and "series" to find that the first numerical digit designating a particular group based on primary alloying element meant that all aluminum sheet with primarily that alloying element belong to the series. Commerce also determined that "as designated by the Aluminum Association" also means to include any aluminum sheet having major alloying element of manganese.  *Id.* at 14-15.

41.     Commerce determined that proprietary alloys can be classified by the Aluminum Association.  *Id*. at 13-14.  Commerce, however, did not consider that the Aluminum Association sets limits to what may be considered an "equivalent."  In the same publication upon which Commerce relied, the Aluminum Association provided the limits for the variations for the chemical elements.  Valeo's proprietary grade heat-treated T-series aluminum sheet does not meet those parameters to be considered an equivalent.  Commerce did not address these evidence and argument, nor did it explain or even attempt to explain how Valeo's product can be in scope notwithstanding the fact that it is not manufactured from a designated 1XXX-, 3XXX-, or 5XXX-series alloy as required by the scope of the Orders.

42.     Commerce refused to consider the meaning or significance of the word "common" in the applicable scope language.  *Id.* at 21

43.     In conjunction with the Commission investigation investigation, a preliminary hearing was held before the International Trade Commission ("ITC") in December 2017.

44.     Valeo participated in the Commission's hearing, testifying that its T-series were not included within the scope of the Commission's investigation and that it did not meet the 3xxx specifications.  Valeo's testimony on these points was part of the administrative record.

45.     At the Commission's hearing, chemical specifications outlining the distinction between excluded heat-treatable alloys and in-scope heat-treatable alloys was publicly presented.

46.     In December 2018, Valeo filed a post-hearing brief reiterating the distinctions between alloys included and excluded from the investigation.

47.     At the conclusion of the investigation, the Commission unequivocally stated that "{a}luminum sheet subject to these investigations are of 1XXX, 3XXX, and 5XXX series alloys that are non-heat treatable." *See Common Alloy Aluminum Sheet from China, Inv. Nos. 701-TA-591 and 731-TA-1399 (Final*), USITC Pub. No. 4861 (Jan. 2019) at I-11, I-12 (emphasis added). Additionally, the Commission stated that "heat-treated aluminum sheet (*e.g.*, 6xxx alloy series) is not covered by Commerce's scope." *Id.* (emphasis added).

48.     At the conclusion of the investigation, new Harmonized Tariff Schedule of the United States ("HTSUS") subheadings were created to capture out-of-scope heat-treatable alloys. HTSUS defines "heat-treatable" alloy as "aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloy." *See* Letter from Crowell & Moring to Sec'y of Commerce, *Request for Additional Information*, Case Nos. A-570-073; C-570-074 (Mar. 23, 2021) at Exhibit SUPP-4, 76-3.

49.     At the inception of a series of new investigations involving common alloys, identically defined, the petition notes that HTSUS subheading 7606.12.3091 covers "imports of out-of-scope heat-treatable sheet." *See* Memorandum to the File, Factual Information Relevant to the Final Scope Ruling Determination: Valeo's Heat-Treated T-Series Aluminum Sheet, Case Nos. A-570-073; C-570-074 (Oct. 15, 2021) at Attachment 6, p.11 and Exhibit GEN-3.  This subheading provides for "{h}eat-treatable industrial alloys" described in Statistical Note 6 to

Chapter 76, which is defined as "aluminum containing by weight 3.0 percent or less of magnesium and 3.0 percent or less of silicon, and/or are designated as series 6xxx in the Aluminum Association's specifications of registered alloys."

50.     It is uncontested that Valeo's T-series alloys meet the definition of a heat-treatable alloy as defined in the HTSUS and confirmed by the petitioners as capturing out-of-scope heat-treatable sheet.

51.     Commerce failed to consider that the Commission excluded heat-treatable aluminum sheet from its injury analysis and improperly disregarded the Commission's determination on the issue, finding that the two referenced statements are contradictory.

52.     The Commission's statements are not contradictory; rather, they yield the logical conclusion that registered alloys prefaced with a 3 (*i.e.*, not heat-treatable alloys) are included in Commerce's scope and the International Trade Commission's injury analysis, but heat-treated alloys that are not registered alloys (or variants thereof) are excluded from the International Trade Commission's injury analysis and the scope of the Orders.

53.     The designation system cited by Commerce is inapplicable to unregistered alloys. The header prefacing the grouping system cited by Commerce notes that "{a} numerical designation assigned in conformance with this Recommendation should only be used to indicate an aluminum or an aluminum alloy having chemical composition limits identical to those registered with the Signatories to the Declaration of Accord on an International Alloy Designation System for Wrought Aluminum and Wrought Aluminum Alloys. *See* 4th Scope Ruling Request at Attachment III, Attachment 1, Exhibit 3, p.28 (emphasis added).

54.     Commerce disregarded that header and instead wrongly applied the numerical designation system to an alloy that does not feature chemical composition limits within the parameters of those registered with the signatories.

55.     Commerce stated that "Valeo has not demonstrated that ITC's statement regarding the scope of the *Orders* not covering heat-treatable alloys was applicable to 1xxx, 3xxx, and 5xxx-series alloys that the ITC explicitly stated were included in the scope of the *Orders*." *Id.* at 17-18.  This presupposes that Valeo's products fell within one of the enumerated alloy series (which as noted above they did not) and at a minimum should have been examined in the contest of a (k)(2) analysis.

## STATEMENT OF CLAIMS

### Count One

28.56.  Paragraphs 1 to 2755 are incorporated herein by reference.

57.     Commerce concedes that it relied on information outside the (k)(1) factors and cannot claim that it was merely soliciting information not dispositive to its determination.

58.     The extensive discussion of heat-treatability demonstrates that the physical characteristics of the product (a k(2) factor) were central to its analysis.  Commerce's memorandum also discusses the end use of the product ("Valeo also argues that its T-series aluminum sheet is an intermediate product…").  End-use, again, is a (k)(2) factor.

59.     Pursuant to 19 C.F.R. § 351.225(e) and (k)(2), if Commerce finds that the issue of whether a product is included within the scope of an order cannot be determined based solely upon the application and the description of the merchandise in (k)(1) sources, Commerce is obliged to initiate a scope inquiry.

60.     Commerce's failure to either rely on a (k)(1) analysis or initiate a scope inquiry to consider the (k)(2) factors was not in accordance with the law.

**Count Two**

29.     Under 28 U S.C. § 1581(i) jurisdiction, the Court must "compel agency action unlawfully withheld or unreasonably delayed."  *See* 5 U.S.C. § 706; *see also* 28 U S C § 2640(e) ("In any civil action not specified in this section, the Court of International Trade shall review the matter as provided in section 706 of title 5.").

61.     While the (k)(1) sources may guide the interpretation, "they cannot substitute for language in the order itself."  *Duferco Steel, Inc. v. United States*, 296 F. 3d 1087, 1097 (Fed. Circ. 2002); *see also Allegheny Bradford Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004) (holding that Commerce '"interpreted"' the order contrary to its terms by determining that beveled edges were not necessary for inclusion in the scope when the plain language was clear that they were).  Scope language must be read in a manner that is "informative and non-superfluous."  *King Supply Co. v. United States*, 674 F.3d 1343, 1350 (Fed. Cir. 2012).

62.     If a term is not defined in by the scope language, the common meaning applies. See *OMG, INC. v. United States*, 972 F. 3d 1358, 1366 (Fed. Cir. 2020) (affirming U.S. Court of International Trade's reliance on dictionary definitions of a nail). Trade usage and industry jargon terms could also be considered for discerning a common meaning. *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012) ("{C}onsideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

63. The plain language of the scope requires that aluminum sheet be "common" and "designated" within "3xxx-series," among others, by the Aluminum Association to be subject to the Orders.

64. Commerce interpreted those terms in a way that is contrary to the Aluminum Association's publications, including those concerning "proprietary equivalents," aided by dictionary definition of "common," which demonstrate that not all aluminum sheet with primary alloying element of manganese is a 3xxx-series alloy.  Indeed, the Aluminum Association itself explicitly forecloses such as reading.  Valeo's T-series aluminum sheet is neither registered nor registrable as a 3xxx-series alloy because it does meet the chemistry requirement to be considered a proprietary equivalent as designated by the Aluminum Association.

30.65.  Commerce's decisions not to issue a scope ruling based upon Valeo's fourth, March 24, 2021, scope ruling application and ~~not to initiate a formal scope inquiry within the 45-day time period unreasonably delayed Commerce's determination concerning whether Valeo's imports of heat-treated T-series aluminum sheet are subject to the Orders.~~the common meaning of the scope terms was not in accordance with the law.

~~**Count Two**~~

**Count Three**

66.  Paragraphs 1 to ~~30~~65 are incorporated herein by reference.

67. Commerce's regulations require that it consider the determinations of the Commission.  19 C.F.R. 355.225(k)(1).  "{A}llow{ing} Commerce to assess antidumping duties on products intentionally omitted from the ITC's injury investigation would frustrate the purpose of the antidumping laws."  *Ad Hoc Shrimp Trade Action Comm. v. United States*, 515 F.3d 1372, 1380 (Fed. Cir. 2008) (citation omitted).  "It is the responsibility of the agency, not those who

initiated the proceedings, to determine the scope of the final orders." *Duferco Steel*, 296 F.3d at 1097.

68.    Commerce's failure to account for the fact that the Commission determined that heat-treat treated products were not covered by the scope of the orders was not in accordance with the law.

### Count Four

69.    Paragraphs 1 to 68 are incorporated herein by reference.

70.    "Substantial evidence is more than a mere scintilla." *See Universal Camera v. National Labor Relations Board,* 340 U.S. 474, 477 (1951). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *See Universal Camera v. National Labor Relations Board,* 340 U.S. 474, 488 (1951). Commerce referred to no evidence on the record to support its finding that Valeo's heat-treated T-series aluminum sheet was not heat-treated. Record evidence contained exhaustive documentation and technical information on this point, which was never rebutted. Moreover, Commerce's own scope ruling memorandum acknowledges that Valeo's product at issue undergoes "thermal treatment." Not only there is ample evidence on the record that Valeo's products are heat-treated, Commerce does not provide any support to find that they are not.

71.    "The reviewing court {}may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). However, the reviewing court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Id.* at 43 (citation omitted).

72.     Commerce found that Valeo's heat-treated T-series aluminum was not heat-treated by presuming that clad and heat-treated products are mutually exclusive, not attempting to discern a definition of heat treatment, and shifting the burden to Valeo to demonstrate that its product is heat-treated without explaining its understanding of that term.

73.     Evidence on the record defines "heat-treated" and Valeo demonstrated that its T-series aluminum sheet met those definitions.

74.     Commerce's determination that Valeo's T-series aluminum sheet was not heat-treated was not supported by substantial evidence and Commerce's failure to define "heat-treated" was contrary to law.

### Count Five

75.     Paragraphs 1 to 74 are incorporated herein by reference.

76.     Commerce determined that clad products include those with "some diffusion" among the layers, and that "some diffusion" means any diffusion short of complete homogeneity.

77.     Neither the scope language, the Aluminum Association publications, nor (k)(1) factors support this interpretation.

78.     Commerce's interpretation of "clad" was contrary to the law.

### Count Six

79.     Paragraphs 1 to 78 are incorporated herein by reference.

80.     Although courts have allowed relying on industry jargon to assess whether a term in the scope language is ambiguous, similar to relying on dictionary definitions, Commerce's analysis here went beyond interpretation of a common meaning of a term.  *ArcelorMittal Stainless Belgium N.V. v. United States*, 694 F.3d 82, 88, n.8 (Fed. Cir. 2012).

("{C}onsideration of industry jargon is not the same as conducting a full-fledged analysis of the factors embodied in 19 C.F.R. § 351.225(k)(2).").

81.     Commerce's regulations provide for procedures to initiate formal scope inquiries to consider (k)(2) factors.  *See* 19 C.F.R. 351.225(e), (f) and (k)(2).

82.     Commerce primarily relied upon various publications by the Aluminum Association and declarations of the Vice President of Standards and Technology for the Aluminum Association.  Commerce relied on those sources to define various terms, such as "clad," "heat-treated," and "3xxx-series."  Those are not appropriate regulatory (k)(1) sources.

83.     Commerce's analysis involved connecting various publications and declarations in its attempt to discern a dispositive meaning.  These declarations were not an appropriate (k)(1) source because they are not the same type of publicly available sources, such as dictionary definitions or scientific authorities, which define a common meaning.  And, Commerce's analysis of the Aluminum Association publications went beyond defining a common meaning.

84.     Alternatively, Commerce's interpretations based on those sources were not dispositive when considering contradicting evidence in the same sources.

85.     Commerce's failure to initiate a formal scope ruling pursuant to its regulations was contrary the law.

### Count Seven

31.86.  Paragraphs 1 to 85 are incorporated herein by reference.

32.87.   The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."  *Id.*

33.88.  Each of Commerce's threefour decisions to extend the deadline for deciding whether to issue a scope ruling based upon Valeo's fourth, March 24, 2021, scope ruling application or initiate a formal scope inquiry were claimed to be for a "good cause" pursuant to 19 C.F.R. §351.302(b).  *See* 1st Extension on 4th Scope Ruling Request; 2nd Extension on 4th Scope Ruling Request; 3rd Extension on 4th Scope Ruling Request.; 4th Extension on 4th Scope Ruling Request.

34.89.  Commerce did not identify a good cause in each extension.  Commerce only provided a summary reasoning for the extension – "{i} light of issues concerning key terms used in the scope of the *Orders*."" or, as stated in the latest extension, "issues with the information value provided to describe its product as part of its scope ruling application and large amount of material."  *Id.*

35.90.  Issues with the "key terms used in scope of the Orders" are not a good cause to violate regulatory deadlines because issues with scope terms exist in virtually every scope ruling request.  Generally, that is why parties request a scope ruling – to "clarify the scope of an order." 19 C.F.R. §351.225.  If a good cause were to exist every time there were issues with the scope terms, "good cause" would lose any meaning.  Thus, Commerce lacked a good cause to extend the regulatory deadline each of the three times.

36.91.  Furthermore, the regulations envision that the issue may "warrant a further inquiry" and provide for the appropriate mechanism for initiating an official scope inquiry when Commerce cannot make its determination "based solely upon the application and the descriptions of the merchandise referred to in paragraph (k)(1)."  19 C.F.R. §351.225(e).  Thus, issues with the scope terms are not a good cause for an extension but are a reason to initiate a formal scope inquiry.

37.92.  Valeo is therefore entitled to a declaratory judgment that Commerce's extensions of the regulatory deadline were *ultra vires* and contrary to law.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Valeo respectfully requests that the Court enter judgment:

1.  Declaring that Commerce's May 10, June 22, and August 6, and September 20, 2021, extensions of the regulatory 45-day time period – for either issuing a scope ruling based upon application pursuant to 19 C.F.R. §351.225(d) or initiating a formal scope inquiry pursuant to 19 C.F.R. §351.225(e) – were not for a "good cause."

2.  Declaring that Commerce's decisions not to issue a scope ruling based upon Valeo's fourth, March 24, 2021, scope ruling application by the 45-day deadline on May 10, 2021, and to extend the decision until September 20, 2021 (which Commerce may delay again), constitute an unreasonable delay of an otherwise required agency action.

2.  Holding that the Decision Memorandum is unsupported by substantial evidence and not in accordance with law.

3.  Remanding Commerce's determination at issue with instructions to issue a new determination consistent with the Court's opinion.

3.4. Ordering Commerce to make a determination pursuant to 19 C.F.R. §351.225(d) or initiate a formal scope inquiry pursuant 19 C.F.R. §351.225(e), and conduct the scope inquiry according to the regulations in effect at the time of the scope ruling application.

5.  Providing such other relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  ~~August 17~~November 15, 2021

_____

Daniel Cannistra
John Anwesen

CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
Tel: 202.624.2902
E-mail: DCannistra@crowell.com

## UNITED STATES COURT OF INTERNATIONAL TRADE

## INFORMATION STATEMENT

*(Place an "X" in applicable [ ])*

| | |
|---|---|
| **PLAINTIFF:** _____ **ATTORNEY** (*Name, Address, Telephone No.*): | |

---

### CONSTITUTIONAL ISSUE - 28 U.S.C. § 255

If this action raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order, check this box: [   ]

---

### J U R I S D I C T I O N

**28 U.S.C. § 1581(a) - Tariff Act of 1930, Section 515 - 19 U.S.C. § 1515**

[  ] Appraisal          [  ] Classification     [  ] Charges or Exactions     [  ] Vessel Repairs
[  ] Exclusion          [  ] Liquidation        [  ] Drawback
[  ] Refusal to Reliquidate   [  ] Rate of Duty    [  ] Redelivery

---

**28 U.S.C. § 1581(b) - Tariff Act of 1930, Section 516 - 19 U.S.C. § 1516**

[  ] Appraisal       [  ] Classification       [  ] Rate of Duty

---

**28 U.S.C. § 1581(c) - Tariff Act of 1930, Section 516A(a)(1), (a)(2) or (a)(3) - 19 U.S.C. §1516a or Section 517(g) – 19 U.S.C. §1517**

(*Provide a brief description of the administrative determination you are contesting, including any relevant **Federal Register** or **Administrative Determination** citation(s) and the product(s) involved in the determination.   For Section 516A(a)(1) or (a)(2), cite the specific subparagraph and clause of the section.*)

Subparagraph and Clause _____ Agency_____

***Federal Register** or **Administrative Determination** Cite(s)* _____

Product(s)_____

---

**28 U.S.C. § 1581(d) - Trade Act of 1974 - 19 U.S.C. §§ 2273, 2341, 2401b**

[  ] U.S. Secretary of Labor    [  ] U.S. Secretary of Commerce    [  ] U.S. Secretary of Agriculture

---

**28 U.S.C. § 1581(e) - Trade Agreements Act of 1979, Section 305(b)(1) - 19 U.S.C. § 2515** (*Provide a brief statement of the final determination to be reviewed.*)

---

**28 U.S.C. § 1581(f) - Tariff Act of 1930, Section 777(c)(2) - 19 U.S.C. § 1677f(c)(2)**

Agency:   [  ] U.S. International Trade Commission     [  ] Administering Authority

---

**28 U.S.C. § 1581(g) - Tariff Act of 1930, Section 641 - 19 U.S.C. § 1641 - or Section 499 - 19 U.S.C. § 1499**

[  ] Sec. 641(b)(2)    [  ] Sec. 641(b)(3)    [  ] Sec. 641(c)(1)    [  ] Sec. 641(b)(5)
[  ] Sec. 641(c)(2)    [  ] Sec. 641(d)(2)(B)  [  ] Sec. 499(b)

**J U R I S D I C T I O N**
(Continued)

---

**28 U.S.C. § 1581(h) - Ruling relating to:**

[  ] Classification          [  ] Valuation          [  ] Restricted Merchandise

[  ] Rate of Duty           [  ] Marking            [  ] Entry Requirements

[  ] Drawbacks              [  ] Vessel Repairs      [  ] Other: _____

_____

---

**28 U.S.C. § 1581(i)** - (*Cite any applicable statute and provide a brief statement describing jurisdictional basis.*)
The Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D) because this action "arises out of {} law{s} of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)–(h) of this section." The agency decision contested concerns administration and enforcement of a matter referenced in subsection (c) of 28 U.S.C. § 1581 and described under 19 U.S.C. § 1516a(a)(2)(B)(vi). 28 U.S.C. § 1581(c) jurisdiction is not available for some of the claims.

---

**28 U.S.C. § 1582 - Actions Commenced by the United States**

[  ] (1) Recover civil penalty under Tariff Act of 1930:

    [  ] Sec. 592          [  ] Sec. 593A          [  ] Sec. 641(b)(6)

    [  ] Sec. 641(d)(2)(A)     [  ] Sec. 704(i)(2)      [  ] Sec. 734(i)(2)

[  ] (2) Recover upon a bond

[  ] (3) Recover customs duties

---

**R E L A T E D   C A S E ( S )**

To your knowledge, does this action involve a common question of law or fact with any other action(s) previously decided or now pending?

| | PLAINTIFF | COURT NUMBER | JUDGE |
|---|---|---|---|
| [  ] Decided: | | | |
| [  ] Pending: | | | |

(Attach additional sheets, if necessary.)

(As amended, eff. Jan. 1, 1985; Jan. 25, 2000, eff. May 1, 2000; May 25, 2004, eff. Sept. 1, 2004; Nov. 29, 2005, eff. Jan. 1, 2006; Nov. 28, 2006, eff. Jan. 1, 2007; Dec. 4, 2012, eff. Jan. 1, 2013; Sept. 18, 2018, eff. Oct. 15, 2018.)

## UNITED STATES COURT OF INTERNATIONAL TRADE

## INFORMATION STATEMENT

*(Place an "X" in applicable [ ])*

| | |
|---|---|
| **PLAINTIFF:**<br>VALEO NORTH AMERICA, INC.<br><br>**ATTORNEY** (*Name, Address, Telephone No.*):<br>Daniel Cannistra<br>1001 Pennsylvania Avenue, N.W.<br>Washington, DC  20004-2595<br>Tel: 202.624.2902 | |

### CONSTITUTIONAL ISSUE - 28 U.S.C. § 255

If this action raises an issue of the constitutionality of an Act of Congress, a proclamation of the President or an Executive order, check this box: [ ]

### J U R I S D I C T I O N

**28 U.S.C. § 1581(a) - Tariff Act of 1930, Section 515 - 19 U.S.C. § 1515**

[ ] Appraisal        [ ] Classification        [ ] Charges or Exactions        [ ] Vessel Repairs
[ ] Exclusion        [ ] Liquidation           [ ] Drawback
[ ] Refusal to Reliquidate    [ ] Rate of Duty    [ ] Redelivery

**28 U.S.C. § 1581(b) - Tariff Act of 1930, Section 516 - 19 U.S.C. § 1516**

[ ] Appraisal        [ ] Classification        [ ] Rate of Duty

**28 U.S.C. § 1581(c) - Tariff Act of 1930, Section 516A(a)(1), (a)(2) or (a)(3) - 19 U.S.C. §1516a or Section 517(g) – 19 U.S.C. §1517**

(*Provide a brief description of the administrative determination you are contesting, including any relevant **Federal Register** or **Administrative Determination** citation(s) and the product(s) involved in the determination.   For Section 516A(a)(1) or (a)(2), cite the specific subparagraph and clause of the section.*)

Subparagraph and Clause § 1516a(a)(2)(A)(ii) and (B)(vi)        Agency Department of Commerce

***Federal Register** or **Administrative Determination** Cite(s)* Memorandum, "Final Scope Ruling Determination," Oct. 15, 2021

Product(s) Certain aluminum alloy sheet from China

**28 U.S.C. § 1581(d) - Trade Act of 1974 - 19 U.S.C. §§ 2273, 2341, 2401b**

[ ] U.S. Secretary of Labor    [ ] U.S. Secretary of Commerce    [ ] U.S. Secretary of Agriculture

**28 U.S.C. § 1581(e) - Trade Agreements Act of 1979, Section 305(b)(1) - 19 U.S.C. § 2515** (*Provide a brief statement of the final determination to be reviewed.*)

**28 U.S.C. § 1581(f) - Tariff Act of 1930, Section 777(c)(2) - 19 U.S.C. § 1677f(c)(2)**

Agency:  [ ] U.S. International Trade Commission    [ ] Administering Authority

**28 U.S.C. § 1581(g) - Tariff Act of 1930, Section 641 - 19 U.S.C. § 1641 - or Section 499 - 19 U.S.C. § 1499**

[ ] Sec. 641(b)(2)    [ ] Sec. 641(b)(3)    [ ] Sec. 641(c)(1)    [ ] Sec. 641(b)(5)
[ ] Sec. 641(c)(2)    [ ] Sec. 641(d)(2)(B)    [ ] Sec. 499(b)

**J U R I S D I C T I O N**
(Continued)

---

**28 U.S.C. § 1581(h) - Ruling relating to:**

[ ] Classification    [ ] Valuation    [ ] Restricted Merchandise

[ ] Rate of Duty    [ ] Marking    [ ] Entry Requirements

[ ] Drawbacks    [ ] Vessel Repairs    [ ] Other: _____

_____

---

**28 U.S.C. § 1581(i)** - (*Cite any applicable statute and provide a brief statement describing jurisdictional basis.*)
The Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D) because this action "arises out of {} law{s} of the United States providing for . . . administration and enforcement with respect to the matters referred to in . . . subsections (a)–(h) of this section."  The agency decision contested concerns administration and enforcement of a matter referenced in subsection (c) of 28 U.S.C. § 1581 and described under 19 U.S.C. § 1516a(a)(2)(B)(vi). 28 U.S.C. § 1581(c) jurisdiction is not available for some of the claims.

---

**28 U.S.C. § 1582 - Actions Commenced by the United States**

[ ] (1) Recover civil penalty under Tariff Act of 1930:

     [ ] Sec. 592    [ ] Sec. 593A    [ ] Sec. 641(b)(6)

     [ ] Sec. 641(d)(2)(A)    [ ] Sec. 704(i)(2)    [ ] Sec. 734(i)(2)

[ ] (2) Recover upon a bond

[ ] (3) Recover customs duties

---

**R E L A T E D   C A S E(S)**

To your knowledge, does this action involve a common question of law or fact with any other action(s) previously decided or now pending?

| | PLAINTIFF | COURT NUMBER | JUDGE |
|---|---|---|---|
| [ ] Decided: | | | |
| [ ] Pending: | | | |

(Attach additional sheets, if necessary.)

(As amended, eff. Jan. 1, 1985; Jan. 25, 2000, eff. May 1, 2000; May 25, 2004, eff. Sept. 1, 2004; Nov. 29, 2005, eff. Jan. 1, 2006; Nov. 28, 2006, eff. Jan. 1, 2007; Dec. 4, 2012, eff. Jan. 1, 2013; Sept. 18, 2018, eff. Oct. 15, 2018.)